## AFFIDAVIT

I, Richard C. Bernecker, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being duly sworn, depose and state as follows:

1. I am a TFO with DEA in the Cincinnati Resident Office (RO) and have been since August 2012. Prior to my assignment as a Task Force Officer, I was a Patrolman and Detective at the Colerain Police Department. I have been employed as a police officer for nineteen (19) years. As a Task Force Officer with the DEA, my duties have included the investigations of violations of federal laws concerning the importation, manufacture, possession, and distribution of controlled substances as defined by Title 21, United Stated Code, including controlled substances such as heroin, cocaine, methamphetamine, and other dangerous drugs. During my tenure as a police officer, I have participated in numerous investigations involving drug trafficking and have attended numerous specialized training schools conducted by the DEA and other law enforcement agencies. Some of the training I have attended includes: DEA Basic Investigators School, Operation Jet-way Training (training that is specialized to airplane, train, and bus interdiction), Interdiction Training, and many more. I have participated in all aspects of drug investigations, including physical surveillance, undercover operations, execution of search warrants, interdictions, and arrests of drug traffickers.

2. This Affidavit sets forth the factual basis for the civil forfeiture of certain seized property and is based on my personal investigation. It does not include all information obtained during this investigation, rather only that believed necessary to provide a legal basis for the civil forfeiture.

3. On March 20, 2020, agents from the Cincinnati RO developed information that William Powell, Jr., was booked on a Delta airlines flight that day from Cincinnati, Ohio, to San Francisco, California. Powell's travel itinerary had the following indicators of suspicious activity: his ticket was purchased the same day as the day of travel; he purchased a one-way ticket; he was visibly nervousness prior to boarding; and he was traveling to San Francisco, California, which is a known source city/state, when it was in complete lockdown per order of the Governor of California because of COVID-19. A search of Powell's criminal history showed numerous prior drug-related arrests.

4. I responded to the departure gate accompanied by TFO Joseph J. Luebbers, Airport Police Department (APD) Sargeant Bentley, and APD Officer Norman Robert Minter. Once there, I observed Powell staring at the other officers; he was overly nervous and watching the agents standing behind the gate in the jetway area. Powell approached the gate and scanned his ticket after the aircraft was completely boarded. On his approach to the jetway to board the aircraft, I asked if I could talk to him, and he consented. I identified myself as law enforcement and advised Powell that the other officers and I were part of an interdiction team looking for large sums of currency, narcotics, or any kind of contraband including weapons. Powell stated that he had money in his carry-on bag and consented to a search of the bag, placing it on the floor for officers to search.

5. During the search of Powell's carry-on bag, TFO Luebbers found four (4) bundles of United States currency concealed in clothing and wrapped in rubber bands. TFO Luebbers asked Powell if the currency was his, and Powell responded, "Yep, the money is mine, why? Is it illegal to carry money?" TFO Luebbers told Powell that it was

2

not illegal to carry money but that the agents would like to verify the currency was Powell's. Powell stated that the currency was his and was not exactly sure of the amount but approximated it at $10,000.00. Officer Minter asked Powell if he could check the pockets of the clothing he was wearing, and Powell consented. Upon searching Powell's pockets, Officer Minter discovered approximately 1-2 grams of marijuana in a baggie. Powell immediately laughed and said, "I forgot that was there." Officer Minter confiscated the marijuana from Powell.

6. TFO Luebbers asked if he could look through Powell's phone, and Powell consented, handing the TFO Luebbers his phone. Upon searching Powell's phone, TFO Luebbers discovered several pictures and text messages indicating that Powell was involved in illegal drug activity. There were several pictures of harvested marijuana along with pictures of rubber-banded stacks of U.S. currency. The currency in one the pictures appeared to total $60,000.00. The marijuana in the pictures appeared to be as much as a few ounces and some pictures showed approximately six baggies of marijuana in a pile appearing ready for sale. There was also a picture of a wire transfer receipt for $1,000.00 on March 2, 2000, and a picture of a PayPal currency transfer receipt in the amount of $1,040.00 to Kalisha Ship. There was a saved address on the phone for a location in Thousand Oaks, California. Finally, there were numerous text messages indicative of narcotic transactions on Powell's phone.

7. TFO Luebbers asked Powell why he was traveling to San Francisco when the area was under a lockdown. Powell stated, "That stuff does not bother me, I'm going out to buy a car." TFO Luebbers asked if he had information or a picture of the car that

3

he was interested in buying, and Powel indicated that he did not. Powell did not know what kind of car he was going to San Francisco to buy when asked. Powell stated that he has worked for Auto Arena since 2018 and goes to auto auctions for them, and that has been selling cars since 2017. Sargeant Bentley wrote Powell a citation for possession of marijuana for an appearance in Boone County Court. Powell stated that he was going to buy marijuana out in San Francisco while he was there. At the end of the encounter, Powell stated that there was "no reason to fly to San Francisco now" as he laughed. The ticket agents removed him from the flight manifest and he was directed to the area to rebook his flight.

8. In total, $12,521.00 in U.S. currency was discovered and seized from Powell (. He was the only individual present at the time other than law enforcement, and he indicated that there was no one else that would want to place a claim on the currency as it was all his. After its seizure, the currency was examined by a drug-detecting dog, who showed a positive indication for a narcotic odor thereon.

9. Several factors established probable cause to believe that the currency seized from Powell was proceeds of illegal drug trafficking or intended to be furnished in exchange for illegal drugs, including but not limited to the following:

    a. Powell's travel to a known source city/state with a large amount of cash on a one-way airline ticket purchased the same day;

    b. Powell's nervousness and overall demeanor;

    c. Powell's history of drug-related arrests;

    d. Photos and text messages on Powell's cell phone indicative of drug trafficking;

e.  The lack of any credible assertion of a legal source for the currency;

f.  The manner in which the seized currency was packaged and concealed; and

g.  The positive alert by a drug-detecting dog on the seized currency.

10.  DEA commenced administrative forfeiture proceedings against the $12,521.00 in U.S. currency. On or about January 1, 2024, Powell filed a claim to the currency in the administrative forfeiture proceeding, asserting that the seized currency was obtained "from the buying/selling of auction vehicles" and "was being transported in [his] possession to facilitate the additional purchases of auction vehicles."

11.  Based on the information provided in this Affidavit, affiant believes that the seized currency was furnished or intended to be furnished in exchange for controlled substances, represents proceeds traceable to such an exchange, or was intended to be used to facilitate the illegal sale of narcotics and is, therefore, subject to seizure and forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

I declare under penalty of perjury, as provided by federal law, that the foregoing statements are true. Further your affiant sayeth naught on this the 28 day of March, 2024.

Richard C. Bernecker, Task Force Officer
Drug Enforcement Administration